UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

Nos. 94-1431(L)

---

Anheuser-Busch, Incorporated,

                              Plaintiff - Appellant,

        versus

Kurt L. Schmoke, etc., et al,

                              Defendants - Appellees.

---

O R D E R

---

        The Court amends its opinion filed November 13, 1996, as follows:

        On page 3, section 3 -- the counsel information is deleted and replaced with the following:

> Eric Michael Rubin, Walter E. Diercks, Jeffrey Harris,
> RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, Washington,
> D.C.; John Joseph Walsh, Steven G. Brody, CADWALADER,
> WICKERSHAM & TAFT, New York, New York; Thomas M. Wood,
> IV, NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.,
> Baltimore, Maryland; P. Cameron DeVore, DAVIS, WRIGHT,
> TREMAINE, Seattle, Washington, for Appellant.  Neal M.
> Janey, City Solicitor, Burton Harry Levin, Principal
> Counsel, DEPARTMENT OF LAW, Baltimore, Maryland, for
> Appellees.  Richard E. Wiley, Lawrence W. Secrest, III,
> Daniel E. Troy, Luis de la Torre, Frank Winston, Jr.,
> WILEY, REIN & FIELDING, Washington, D.C.; J. Joshua
> Wheeler, Robert M. O'Neil, THOMAS JEFFERSON CENTER FOR
> THE PROTECTION OF FREE  EXPRESSION, Charlottesville,

Virginia, for Amici Curiae Media Institute, et al.
Daniel J. Popeo, David A. Price, Richard A. Samp,
WASHINGTON LEGAL FOUNDATION, Washington, D.C., for Amicus
Curiae Washington Legal Foundation.  Christopher J.
Fritz, Julie Ellen Squire, Thomas C. Dame, GALLAGHER,
EVELIUS & JONES, Baltimore, Maryland, for Amici Curiae
Coalition for Beautiful Neighborhoods, et al.  George
Hacker, CENTER FOR SCIENCE IN THE PUBLIC INTEREST,
Washington, D.C., for Amicus Curiae Center for Science.
John F. Kamp, Washington, D.C.; Gilbert H. Weil, New
York, New York; Burt Neuborne, New York, New York, for
Amici Curiae Association of National Advertisers, Inc.

For the Court - By Direction


/s/ Patricia S. Connor
_____
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANHEUSER-BUSCH, INCORPORATED,
Plaintiff-Appellant,

v.

KURT L. SCHMOKE, in his official
capacity as Mayor of Baltimore
City; MAYOR AND CITY COUNCIL OF
BALTIMORE CITY; CITY COUNCIL OF
BALTIMORE CITY; DAVID TANNER, in
his official capacity as the General
Superintendent of Zoning
Administration and Enforcement,
Defendants-Appellees,

and

JOHN JOSEPH CURRAN, Attorney
General of the State of Maryland, in
his official capacity,

Defendant.

No. 94-1431

THE ASSOCIATION OF NATIONAL
ADVERTISERS, INCORPORATED; THE
AMERICAN ASSOCIATION OF
ADVERTISING AGENCIES; THE MEDIA
INSTITUTE; NATIONAL ASSOCIATION OF
BROADCASTERS; THE THOMAS
JEFFERSON CENTER FOR THE
PROTECTION OF FREE EXPRESSION;
WASHINGTON LEGAL FOUNDATION;
CENTER FOR SCIENCE IN THE PUBLIC
INTEREST; COALITION FOR BEAUTIFUL
NEIGHBORHOODS; BALTIMORE CITY
WIDE LIQUOR COALITION FOR BETTER
LAWS AND REGULATIONS,
Amici Curiae.

PENN ADVERTISING OF BALTIMORE,
INCORPORATED,
Plaintiff-Appellant,

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE CITY, A Municipal
Corporation,
Defendant-Appellee,

and

JOHN JOSEPH CURRAN, Attorney
General of the State of Maryland, in
his official capacity,
Defendant.

No. 94-1432

THE ASSOCIATION OF NATIONAL
ADVERTISERS, INCORPORATED; THE
AMERICAN ASSOCIATION OF
ADVERTISING AGENCIES; THE MEDIA
INSTITUTE; NATIONAL ASSOCIATION OF
BROADCASTERS; THE THOMAS
JEFFERSON CENTER FOR THE
PROTECTION OF FREE EXPRESSION;
WASHINGTON LEGAL FOUNDATION;
CENTER FOR SCIENCE IN THE PUBLIC
INTEREST; COALITION FOR BEAUTIFUL
NEIGHBORHOODS; BALTIMORE CITY
WIDE LIQUOR COALITION FOR BETTER
LAWS AND REGULATIONS,
Amici Curiae.

On Remand from the United States Supreme Court.

(S. Ct. No. 95-685)

Decided on Remand: November 13, 1996

2

Before NIEMEYER and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Hamilton joined. Senior Judge Butzner wrote a dissenting opinion.

_____

**COUNSEL**

Eric Michael Rubin, Walter E. Diercks, Jeffrey Harris, RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, Washington, D.C.; John Joseph Walsh, Steven G. Brody, CADWALADER, WICKERSHAM & TAFT, New York, New York; Thomas M. Wood, IV, NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., Baltimore, Maryland; P. Cameron DeVore, DAVIS, WRIGHT, TREMAINE, Seattle, Washington, for Appellant. Neal M. Janey, City Solicitor, Burton Harry Levin, Principal Counsel, DEPARTMENT OF LAW, Baltimore, Maryland, for Appellees. Richard E. Wiley, Lawrence W. Secrest, III, Daniel E. Troy, Luis de la Torre, Frank Winston, Jr., WILEY, REIN & FIELDING, Washington, D.C.; J. Joshua Wheeler, Robert M. O'Neil, THOMAS JEFFERSON CENTER FOR THE PROTECTION OF FREE EXPRESSION, Charlottesville, Virginia, for Amici Curiae Media Institute, et al. Daniel J. Popeo, David A. Price, Richard A. Samp, WASHINGTON LEGAL FOUNDATION, Washington, D.C., for Amicus Curiae Washington Legal Foundation. Christopher J. Fritz, Julie Ellen Squire, Thomas C. Dame, GALLAGHER, EVELIUS & JONES, Baltimore, Maryland, for Amici Curiae Coalition for Beautiful Neighborhoods, et al. George Hacker, CENTER FOR SCIENCE IN THE PUBLIC INTEREST, Washington, D.C., for Amicus Curiae Center for Science. John F. Kamp, Washington, D.C.; Gilbert H. Weil, New York, New York; Burt Neuborne, New York, New York, for Amici Curiae Association of National Advertisers, Inc.

_____

3

**OPINION**

NIEMEYER, Circuit Judge:

On May 13, 1996, the Supreme Court handed down its decision in 44 Liquormart, Inc. v. Rhode Island, 116 S. Ct. 1495 (1996), and a week later vacated our decision in this case and remanded it to us "for further consideration in light of 44 Liquormart, Inc. v. Rhode Island." 116 S. Ct. 1821. We have read the opinion in 44 Liquormart and have considered its impact on the judgment in this case. For the reasons that follow, we conclude that 44 Liquormart does not require us to change our decision. Accordingly, we affirm the district court's judgment for the reasons previously given and readopt our previous decision.* See Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305 (4th Cir. 1995) (Anheuser-Busch I).

I

In Anheuser-Busch I, we upheld against a constitutional challenge a city ordinance prohibiting the placement of stationary, outdoor advertising that advertises alcoholic beverages in certain areas of Baltimore City. 63 F.3d at 1317. The ordinance was designed to promote the welfare and temperance of minors exposed to advertisements for alcoholic beverages by banning such advertisements in particular areas where children are expected to walk to school or play in their neighborhood. Id. at 1314-17. Applying the four-prong test for evaluating commercial speech announced in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557 (1980), we concluded,

───────────────────────────────

* In readopting our opinion, we do not continue to rely on Posadas de Puerto Rico Associates v. Tourism Co. of P.R., 478 U.S. 691 (1984), in view of the doubt placed on that opinion by a majority of the Court in 44 Liquormart. See 116 S. Ct. at 1511 (Stevens, J., concurring in the judgment) (joined by Kennedy, Thomas, and Ginsburg, JJ.) and 116 S. Ct. at 1522 (O'Connor, J., concurring in the judgment) (joined by Rehnquist, C.J., and Souter and Breyer, JJ.). Because we do not defer blindly to the legislative rationale, but rather agree with it based on our own independent conclusion about the fit between legislative objective and the regulation used to achieve that objective, the holding in Posadas is not necessary to our opinions upholding Baltimore City's ordinance.

4

in respect to the disputed prongs, that the ban of outdoor advertising of alcoholic beverages in limited areas directly and materially advances Baltimore's interest in promoting the welfare and temperance of minors. See Anheuser-Busch I, 63 F.3d at 1314. After our own independent assessment, we recognized the reasonableness of Baltimore City's legislative finding that there is a "definite correlation between alcoholic beverage advertising and underage drinking." Id. We also concluded that the regulation of commercial speech is not more extensive than necessary to serve the governmental interest. Id. at 1316-17. Recognizing that in the regulation of commercial speech there is some latitude in the "fit" between the regulation and the objective, we concluded that "no less restrictive means may be available to advance the government's interest." Id. at 1316. While we acknowledged that the geographical limitation on outdoor advertising may also reduce the opportunities for adults to receive the information, we recognize that there were numerous other means of advertising to adults that did not subject the children to "involuntary and unavoidable solicitation [while] . . . walking to school or playing in their neighborhood." Id. at 1314. Based on our close look at Baltimore's asserted goal and the billboard zoning used to achieve that objective, we concluded:

> Although no ordinance of this kind could be so perfectly tailored as to all and only those areas to which children are daily exposed, Baltimore's efforts to tailor the ordinance by exempting commercial and industrial zones from its effort renders it not more extensive than is necessary to serve the governmental interest under consideration.

Id. at 1317.

II

In 44 Liquormart, by contrast, the State prohibited all advertising throughout Rhode Island, "in any manner whatsoever," of the price of alcoholic beverages except for price tags or signs displayed with the beverages and not visible from the street. 116 S. Ct. at 1501. The State contended that the ban served the State's interest in promoting temperance by keeping alcoholic prices high and therefore consumption low. See id. The district court found as a fact, however, that the

5

ban "has no significant impact" on consumption. <u>Liquormart, Inc. v. Racine</u>, 829 F. Supp. 543, 549 (D.R.I. 1993). The State also argued that the Twenty-first Amendment's delegation to the states of the power "to prohibit commerce in, or the use of, alcoholic beverages," U.S. Const. amend. XXI, § 2, favors the state's ban of price advertising of alcoholic beverages. <u>See</u> 116 S. Ct. at 1502.

The Supreme Court held the blanket ban unconstitutional simply as "an abridgement of speech protected by the First Amendment" and rejected the claim that the Twenty-first Amendment "save[d] Rhode Island's ban on liquor price advertising." 116 S. Ct. at 1501, 1514-15. The opinion for the Court did not provide a rationale for its conclusion that the ban violated the First Amendment, and no opinion addressing the First Amendment violation commanded a majority of the Court. Under <u>Marks v. United States</u>, 430 U.S. 188 (1977), when a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." <u>Id.</u> at 193.

Applying the <u>Marks</u> rule, eight justices in three separate opinions concluded that the mechanism of keeping alcoholic prices high as a way to keep consumption low imposes too broad a prohibition on speech to be justified by the end. <u>See 44 Liquormart</u>, 116 S. Ct. 1509-10 (Stevens, J., concurring in the judgment); <u>id.</u> at 1519 (Thomas, J., concurring in the judgment); <u>id.</u> at 1521-22 (O'Connor, J., concurring in the judgment). Justice Stevens, joined by Justices Kennedy, Souter, and Ginsburg, noted that "without any findings of fact, or indeed any evidentiary support whatsoever, we cannot agree with the assertion that the price advertising ban will significantly advance the State's interest in promoting temperance." <u>Id.</u> at 1509. Justice Stevens also noted that alternative forms of regulation were available that would not impinge speech and would "be more likely to achieve the State's goal of promoting temperance. As the State's own expert conceded, higher prices can be maintained either by direct regulation or by increased taxation." <u>Id.</u> at 1510. Similarly, Justice O'Connor, writing an opinion in which Chief Justice Rehnquist, Justice Souter and Justice Breyer joined, concluded,

> If the target is simply higher prices generally to discourage
> consumption, the regulation imposes too great, and unneces-

6

> sary, a prohibition on speech in order to achieve it. . . .
> "[T]he objective of lowering consumption of alcohol by
> banning price advertising could be accomplished by estab-
> lishing minimum prices and/or by increasing sales taxes on
> alcoholic beverages."

Id. at 1521-22 (O'Connor, J., concurring in the judgment) (quoting 44
Liquormart, Inc. v. Rhode Island, 39 F.3d 5, 7 (1st Cir. 1994) (quot-
ing Rhode Island's expert witness)). Justice O'Connor concluded that
because the regulation fails "even the less stringent standard set out
in Central Hudson, nothing here requires adoption of a new analysis
for the evaluation of commercial speech regulation." Id. at 1522
(O'Connor, J., concurring in the judgment). Eight justices thus con-
cluded that keeping legal users of alcoholic beverages ignorant of
prices through a blanket ban on price advertising does not further any
legitimate end. See id. at 1509-10 (Stevens, J., concurring in the judg-
ment); id. at 1518 (Thomas, J., concurring in the judgment); id. at
1521-22 (O'Connor, J., concurring in the judgment).

III

While Rhode Island's blanket ban on price advertising failed
Central Hudson scrutiny, Baltimore's attempt to zone outdoor alco-
holic beverage advertising into appropriate areas survived our "close
look" at the legislature's means of accomplishing its objective in
Anheuser-Busch I. Baltimore's ordinance expressly targets persons
who cannot be legal users of alcoholic beverages, not legal users as
in Rhode Island. More significantly, Baltimore does not ban outdoor
advertising of alcoholic beverages outright but merely restricts the
time, place, and manner of such advertisements. And Baltimore's
ordinance does not foreclose the plethora of newspaper, magazine,
radio, television, direct mail, Internet, and other media available to
Anheuser-Busch and its competitors.

Moreover, in Baltimore City's case, neither the state nor the city
is attempting to undermine democratic processes and circumvent pub-
lic scrutiny by substituting a ban on advertising for a ban on the prod-
uct, as the 44 Liquormart Court feared was the case with Rhode
Island. 116 S. Ct. at 1508 (Stevens, J., concurring in the judgment);
see also id. at 1517 (Thomas, J., concurring in the judgment) (citing

7

"the dangers of permitting the government to do covertly what it might not have been able to muster the political support to do openly"; Central Hudson, 447 U.S. at 566 n.9; Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 780 n.8 (1976) (Stewart, J., concurring). Rather, in Baltimore City, like in other communities, the possession and consumption of alcoholic beverages by minors has been already banned directly and forthrightly through legislation. See Md. Code Art. 27, §§ 400-403A. Baltimore's restrictions thus reinforce the democratic decisionmaking mechanism's conclusion as to the dangerousness of underage drinking by protecting children from exposure to advertising which the legislature reasonably considers harmful in itself to children's maturation. And far from undermining the free dissemination of information to independently choosing consumers, Baltimore's ordinance supports the full development of its young so that they will be able to assess their market options intelligently and independently.

In addition to the reasons given in Anheuser-Busch I and given here based on our consideration of 44 Liquormart, the differences between the Baltimore and Rhode Island regulations further support the constitutionality of Baltimore's ordinance. In contrast to Rhode Island's desire to enforce adult temperance through an artificial budgetary constraint, Baltimore's interest is to protect children who are not yet independently able to assess the value of the message presented. This decision thus conforms to the Supreme Court's repeated recognition that children deserve special solicitude in the First Amendment balance because they lack the ability to assess and analyze fully the information presented through commercial media. In the context of cable television, the Supreme Court recently upheld restrictions on programming imposed by the Cable Television Consumer Protection and Competition Act as a means of protecting children from indecent programming. See Denver Area Educ. Telecommunications Consortium, Inc. v. FCC, 116 S. Ct. 2374, 3286 (1996) (plurality opinion). In the context of the radio medium, the Court has approved extra restrictions on indecent speech because of the pervasiveness of the medium and the presence of children in the audience. See FCC v. Pacifica Foundation, 438 U.S. 726, 750-51 (1978) (comparing indecent speech during hours when children are listening to the proverbial pig in the parlor); see also Action for Children's Television v. FCC, 58 F.3d 654, 657 (D.C. Cir. 1995) (upholding the Public

8

Telecommunications Act against a First Amendment challenge based on the state's compelling interest in protecting minors), cert. denied, 116 S. Ct. 701 (1996). Similarly, the Supreme Court has sustained a law which protected children from nonobscene literature. See Ginsburg v. New York, 390 U.S. 629, 639-40 (1968). And, while it has acknowledged a right to private possession of adult pornography in the home, see Stanley v. Georgia, 394 U.S. 557, 566 (1968), the Court has clearly distinguished child pornography and allowed a stronger legislative response "to destroy a market for the exploitative use of children." Osborn v. Ohio, 495 U.S. 103, 109 (1990); see also New York v. Ferber, 458 U.S. 747, 759 (1982). The underlying reason for the special solicitude of children was articulated long ago: "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." Prince v. Massachusetts, 321 U.S. 158, 168 (1944).

Baltimore's ordinance attempts to protect its children in a manner and with a motive distinct from those evidenced by Rhode Island in 44 Liquormart and in accord with an unbroken chain of Supreme Court cases which indicate its desire to ensure that children do not become lost in the marketplace of ideas. Accordingly, on reconsideration of our Central Hudson analysis of the time, place, and manner restriction in Anheuser-Busch I in light of 44 Liquormart, we again affirm the judgment of the district court.

IT IS SO ORDERED

BUTZNER, Senior Circuit Judge, dissenting:

I dissent because I believe we should vacate the district courts' judgments and remand these cases for evidentiary hearings. I address in this dissent both the cases pertaining to advertising of alcoholic beverages and the case pertaining to the advertising of cigarettes.

The district court, whose judgment we review, noted that the parties agree that "the [Anheuser-Busch] advertising at issue is not unlawful or misleading, and that the City's interest in promoting the welfare and temperance of minors is substantial . . . ." Anheuser-Busch, Inc. v. Mayor and City Council, 855 F. Supp. 811, 813 (D.Md. 1994). This agreement established that the advertising satisfies the

9

first two parts of the test the Supreme Court prescribed for determining whether regulation of commercial speech violates the First Amendment. See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566 (1980). The difficulty in these cases, and in the related case pertaining to cigarette advertising,* arises from the third and fourth parts of the Central Hudson inquiry. These are "whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." Central Hudson, 447 U.S. at 566. In the cigarette advertising case, the district court noted that the parties agree with the first--but not the second--part of the Central Hudson test. Penn Advertising, 862 F. Supp. at 1406. This slight difference in the posture of the cases does not change my analysis of the proper response to the Supreme Court's remand.

My dissent concerns how we should respond to the Supreme Court's remand and what procedures we should follow at this stage of the litigation. My dissent does not undertake to express an opinion on the merits of these cases. I wholeheartedly agree with Baltimore's officials, the amici who support them, and the parties that minors should not be encouraged directly or subliminally to drink or smoke. Nevertheless, balancing the First Amendment's protection of commercial speech against the city's restriction of the advertising at issue requires answering the third and fourth inquiries of Central Hudson. To obtain a sound basis for deciding these inquiries, district and reviewing courts need factual records. The district courts reached their decisions in Anheuser-Busch and Penn Advertising without an evidentiary hearing. Instead, the courts relied in large part on Posadas de Puerto Rico Assoc. v. Tourism Co. of P.R., 478 U.S. 328 (1986), and deferred to the Baltimore City Council's legislative record and findings. Unfortunately, the district courts did not have the benefit of 44 Liquormart, Inc. v. Rhode Island, 116 S. Ct. 1495 (1996).

In 44 Liquormart, the district court did not accept Rhode Island's legislative determination that banning the advertising of liquor prices

_____

* Penn Advertising of Baltimore, Inc. v. Mayor and City Council, 862 F. Supp. 1402 (D. Md. 1994), aff'd, 63 F.3d 1318 (4th Cir. 1995), vacated and remanded sub nom. Penn Advertising of Baltimore, Inc. v. Schmoke, 116 S. Ct. 2575 (1996).

10

would reduce consumption. Instead, the district court conducted an evidentiary hearing and reached the conclusion, which was based on testimony at the hearing, that the ban was unconstitutional. 44 Liquormart, Inc. v. Racine, 829 F. Supp. 543 (D.R.I. 1993). The court of appeals reversed, accepting as reasonable Rhode Island's submission that competitive price advertising would increase consumption. It held that the statute was constitutional. 44 Liquormart, Inc. v. Rhode Island, 39 F.3d 5 (1st Cir. 1994). In turn, the Supreme Court reversed, criticizing the court of appeals' reliance on legislative findings to determine whether the ban of commercial speech infringed the First Amendment. 44 Liquormart, 116 S. Ct. at 1503-04 (Stevens, J.) and 1515 (O'Connor, J., concurring in the judgment). By deciding not to remand for an evidentiary hearing despite the teaching of 44 Liquormart, I am concerned that our court is following the First Circuit's path.

In 44 Liquormart, the Court criticized its own opinion in Posadas, 478 U.S. at 342, 344, because it had "accepted as reasonable, without further inquiry, Puerto Rico's assertions that the regulations furthered the government's interest and were no more extensive than necessary to serve that interest." 44 Liquormart, 116 S. Ct. at 1522 (O'Connor, J., concurring in the judgment). At least seven members of the Court expressly decided not to follow Posadas, concluding that a legislature's decision to suppress commercial speech, even if reasonable, is not entitled to deference. 44 Liquormart, 116 S. Ct. at 1510-11 (Stevens, J., concurring in the judgment) and 1522 (O'Connor, J., concurring in the judgment). Rather than accept at face value the legislature's proffered justification for a speech regulation, courts should take a "closer look" and carefully examine "the relationship between the asserted goal and the speech restriction used to reach that goal." 116 S. Ct. at 1522 (O'Connor, J., concurring in the judgment). In other words, courts should examine the evidence presented by the parties to make an independent determination about whether the underlying facts satisfy the Central Hudson test. See 116 S. Ct. at 1509-10 (Stevens, J., concurring in the judgment).

The independent evaluation that is now required is not possible in the absence of a factual record. It is true that the positions taken by Baltimore may turn out to be supported by a preponderance of the evidence. But speculation about what might be is not enough to

11

resolve issues of First Amendment coverage that must ultimately turn on factual findings. In order to meet its burden under Central Hudson, the city must show "not merely that its regulation will advance its interest, but also that it will do so `to a material degree.'" 44 Liquormart, 116 S. Ct. at 1509 (Stevens, J., concurring in the judgment) (quoting Edenfield v. Fane, 507 U.S. 761, 771 (1993)). Even assuming, as common sense might suggest, that Baltimore's restrictions will reduce underage drinking to some degree, without any findings of fact we cannot determine whether the effect will be significant. See 44 Liquormart, 116 S. Ct. at 1509 (Stevens, J., concurring in the judgment). Accordingly, each party should be given the opportunity to present evidence on this issue and to test the strength of the opposing party's evidence.

Baltimore must also show that its speech regulation is narrowly tailored. Anheuser-Busch argued that the city could implement other measures that would reduce underage drinking as effectively as the advertising restrictions without regulating speech. The company specifically suggested education programs and increased law enforcement efforts. Cf. 44 Liquormart, 116 S. Ct. at 1510 (Stevens, J., concurring in the judgment) and 1521-22 (O'Connor, J., concurring in the judgment). The company's position must be viewed in light of the numerous exceptions to the ordinance that inevitably will allow a substantial amount of alcohol advertising to reach a great number of minors. The company's argument should be evaluated on the strength of the facts that support and negate it. The parties should be given the opportunity to present and contest those facts.

The same reasoning applies to Baltimore's restriction on cigarette advertising. Whether that restriction advances the asserted governmental interest and whether it is unnecessarily extensive raise factual questions that only an evidentiary hearing can answer. For example, Baltimore's transit buses, which carry children as well as adults, are exempted from the ordinance that restricts advertising of cigarettes. The ordinance permits such advertising at a ball park where minors watch games. What effect these and similar facts have on the validity of the city ordinance should be weighed by a court.

A charge that advertising restrictions infringe rights guaranteed by the First Amendment requires careful evaluation assessing the credi-

12

bility of witnesses and weighing the evidence. These functions should be performed by a judge--not by a city council. See 44 Liquormart, 116 S. Ct. at 1511 (Stevens, J., concurring in the judgment). The court should base its evaluation of the case on the facts underlying the dispute and the reasonable inferences drawn from those facts rather than the version of the facts that appears in the allegations and legislative findings. By affirming the district court's judgment without adducing and examining the facts, a reviewing court engages in the type of deferential review that 44 Liquormart deems improper.

Present in this litigation are questions about the credibility of expert witnesses and genuine issues of material fact concerning the inferences that reasonably can be drawn from the evidence. Because of these circumstances, neither summary judgment nor dismissal under Rule of Civil Procedure 12(b)(6) is appropriate.

I would vacate the district court's judgment and remand these cases for evidentiary hearings.

13