**BAD FROG BREWERY, INC., Plaintiff,**

v.

**NEW YORK STATE LIQUOR AUTHORITY, Anthony J. Casale, Lawrence J. Gedda, Edward F. Kelly, Individually and as Members of the New York State Liquor Authority, Defendants.**

No. 96–CV–1668 (FJS).

United States District Court,
N.D. New York.

July 28, 1997.

Duker, Barrett, Gravante & Markel L.L.P. (George Carpinello, of counsel), Albany, NY, for Plaintiff.

Dennis C. Vacco, Office of the Attorney General, State of New York (David B. Roberts, Ass't Attorney General, of counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Presently before the Court are cross-motions for summary judgment by the Plaintiff Bad Frog Brewery and Defendants New York State Liquor Authority ("NYSLA"), Anthony J. Casale, Lawrence J. Gedda, and Edward F. Kelly, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. In the underlying action, Plaintiff alleges five causes of action against the Defendants aris-

ing out of the Defendants' denial of Plaintiff's beer label application. Plaintiff claims that: (1) the denial of the Plaintiff's beer label application violates the First Amendment of the United States Constitution, (2) the regulation relied on by the Defendants to deny the application, 9 N.Y.C.R.R. § 83.3, is unconstitutionally vague, in violation of the First Amendment, (3) the denial of the Plaintiff's beer label application violates the New York State Constitution, art. 1, § 8, (4) 9 N.Y.C.R.R. § 83.3 is unconstitutionally vague in violation of the N.Y. State Constitution, art. 1, § 8, and (5) the denial of Bad Frog's label application was arbitrary, capricious, affected by errors of law, and exceeded NYSLA's jurisdiction under § 107–a of the New York Alcoholic Beverage Control ("ABC") Law, as well as the NYSLA's own regulations.

### Factual Background

The Plaintiff, Bad Frog Brewery, manufactures and markets several different types of alcoholic beverages under its "Bad Frog" label. The label on the Plaintiff's products contains a caricature of a frog with its four fingered "hand" shown with the second digit extended, depicting what is commonly called "giving the finger," or "flipping the bird." The label also contains such slogans as "He Just Don't Care," "Amphibian With An Attitude," "The Beer So Good ... It's Bad," "Big Bad 40 oz.," and "Turning Bad Into Good."

Bad Frog's labels are approved by the Federal Bureau of Alcohol, Tobacco, and Firearms. Under New York's Alcoholic Beverage Control ("ABC") Law, any alcoholic product to be marketed in New York must have its brand or trade name label approved by the NYSLA. The Plaintiff twice sought approval from the NYSLA of its label. After being denied on the first attempt, the plaintiff altered the proposed label, replacing the phrase, "He's Mean, Green, and Obscene," with "Turning Bad to Good." The new label was also rejected by the NYSLA. The general reason stated by the Defendants for their denial was that they disapproved of the general content and message of the slogans taken together with the frog illustration. Defendants relied on a NYSLA regulation prohibiting "signs" which are "obscene or

indecent," or those which are "obnoxious or offensive to the commonly and generally accepted standard of fitness and good taste. ...."[1] N.Y. Comp.Codes R. & Regs. tit. 9, § 83.3(2)(iii)(1996).

## Procedural Background

Plaintiff initially sought injunctive relief, enjoining the Defendants from taking steps to prohibit the sale or marketing of Bad Frog beer pending the ultimate resolution of this action. On December 5, 1996, this Court denied Plaintiff's motion, finding that the Plaintiff had not met its burden of showing that it was clearly entitled to the relief it requested.[2] *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 96–CV–1668, 1996 WL 705786, at *4–5 (N.D.N.Y. Dec. 5, 1996). As a preliminary matter, the Court found that the speech at issue is "commercial" in nature, and that the appropriate standard for reviewing government regulation of commercial speech is the four-part test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n.*, 447 U.S. 557, 563–65, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980).[3] *Id.* at *3. Further, the Court found that the first prong of the *Central Hudson* test had been met, that is, the speech in question concerns a lawful activity and is not misleading. *Id.* For purposes of this decision, these holdings remain viable.

After our previous interlocutory order, the Plaintiff filed a notice of appeal and sought leave of the Second Circuit to expedite the appeal. Upon stipulation of the parties, the Plaintiff withdrew its notice of appeal, and the parties submitted the cross-motions for summary judgment that are presently before the Court.

## Discussion

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). Where, as here, cross motions for summary judgment are before the Court, neither side is barred from asserting that there are issues of fact sufficient to prevent the entry of judgment as a matter of law, against it. When faced with cross-motions for summary

---

1. Two sets of regulations exist governing the licensing of liquor labels: (1) 9 N.Y.C.R.R. §§ 83.1 et seq., which apply to signs, posters, decals, beer tap markers, graphic displays, etc., and (2) 9 N.Y.C.R.R. §§ 84.1 et seq., which apply to the labels themselves. The NYSLA applies both sets of regulations when determining whether to approve a label application.

2. The Court found that Plaintiff's requested relief was mandatory in nature and required the heightened showing set forth in *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985).

3. In their submissions, the Plaintiff renews two arguments as to why the standards set forth in *Central Hudson* should not be applied. Plaintiff first argues that because the regulation in question is content based, the Court should apply the "strict scrutiny" test. This contention lacks merit. The Supreme Court has consistently applied *Central Hudson* in situations where the government seeks to regulate the content of commercial speech. *See e.g., United States v. Edge Broadcasting Co.*, 509 U.S. 418, 424, 113 S.Ct. 2696, 2702, 125 L.Ed.2d 345 (1993) (challenge of a federal statute restricting advertisement of state lotteries); *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 620, 115 S.Ct. 2371, 2374, 132 L.Ed.2d 541 (1995) (challenge of a Florida Statute which prohibited direct mail legal solicitations to victims and their relatives for thirty days following an accident or disaster); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 68, 103 S.Ct. 2875, 2881, 77 L.Ed.2d 469 (1983) (challenge of federal statute prohibiting the mailing of unsolicited advertisements for contraceptives).

The Plaintiff next argues that *Central Hudson*, should not apply in light of the Supreme Court's recent decisions in *Ibanez v. Florida Dept. of Bus. and Prof. Reg.*, 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994); and *44 Liquormart, Inc. v. Rhode Island*, —— U.S. ——, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). The Plaintiff contends that these cases stand for the proposition that when a state "entirely prohibits" the use of commercial messages which are otherwise "truthful and non-misleading," a more stringent First Amendment analysis, strict scrutiny, is required. The Court, after reviewing those cases, disagrees. While there is some suggestion by Justice Stevens and two concurring justices that a different more-stringent standard should be applied in certain circumstances, at least five justices found that *Central Hudson* was the appropriate test for reviewing regulations on *all* types of commercial speech.

judgment, a district court is not required to grant judgment as a matter of law for one side or the other. "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Board of Educ.*, 667 F.2d 305 (2d Cir. 1981)). Both parties seek summary judgment on the Plaintiff's federal constitutional claims before the Court. In addition, the Plaintiff seeks summary judgment on several of its alleged pendant state claims. Plaintiff's primary claim and first cause of action alleges that the Defendants' regulation of the Plaintiff's label violates the First Amendment. Plaintiff's secondary claim is that NYSLA regulation, 9 N.Y.C.R.R. § 83.3, is unconstitutionally vague. The Court will first address the Plaintiff's primary constitutional claim, and then address the Plaintiff's vagueness challenge and the remaining state claims.

# I. REGULATION OF PLAINTIFF'S LABEL

■ In view of this Court's previous ruling[4], we need now focus on whether the Government has met their summary judgment burden with respect to the remaining prongs of the *Central Hudson* test. The second, third and fourth prongs of the *Central Hudson* test require: (2) that the government assert a "substantial" government interest in support of its regulation, (3) that the government demonstrate that the restriction on commercial speech directly and materially advances that interest, and (4) that the regulation is narrowly drawn. *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 624–625, 115 S.Ct. 2371, 2376, 132 L.Ed.2d 541 (1995) (citing *Central Hudson*, 447 U.S. 557, 563–65, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980)).

## A. The Existence of a Substantial Government Interest in Regulating the Plaintiff's Label

The Defendants advance two interests which they argue are substantial. First, the

Defendants argue that New York State has a substantial interest in protecting minors from profane advertising. Second, the State asserts that New York State has a substantial government interest in promoting temperance and respect for the law.

### 1) Profane Advertising

As a preliminary matter, the Plaintiff argues that the Court should not consider the asserted governmental interest of protecting children from profane advertising because it is not expressly stated in the legislative purpose of the New York Alcoholic Beverage Control Law ("ABC Law"), which is the statutory basis for the NYSLA's authority to regulate beer labels. Defendants counter that the *Central Hudson* analysis does not require the asserted governmental interest to be specifically set forth in the legislative purpose of the underlying regulatory scheme.

■ The Supreme Court case *Rubin v. Coors Brewing Co.* is instructive on this issue. In that case *Rubin,* a beer brewer challenged the federal government's prohibition on displaying the alcoholic content of a type of beer on its label. *Rubin,* 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995). The Supreme Court found, in relevant part, that the government's asserted interest in preventing "strength wars" between competing beer brewers was substantial, even though it found merit in the brewer's contention that this interest was not contemplated by Congress at the time it passed the Federal Alcohol Administrative Act in 1935. *Id.* at 484–85, 115 S.Ct. at 1591. The Court reasoned that the explicit purpose of a statute or regulation need not be the only government interest served by the enforcement of that regulation. *Id.* The Court further found that the government's asserted interest could be linked to the ever present government interest of protecting the health, safety and welfare of its citizens. *Id.* Thus, for purposes of a *Central Hudson* analysis, this Court need not confine itself to only what is explicitly set forth as the legislative purpose of New York ABC Law in determining the validity of the Government interest asserted.

4. As stated, the first prong of the *Central Hudson* test has already been met.

Further, as we intimated in our previous decision, the Court finds that the Government does have a substantial interest in protecting minors from profane advertising. In our previous decision we stated:

> [T]he use of the "frog" on the plaintiff's beer label is obviously a promotional gimmick. As such, it is reasonable to believe that the "frog" would be a major part of any advertising campaign undertaken by the plaintiff to promote its product. Although minors may not be the target of plaintiff's solicitation, any such promotion would necessarily expose them to the "frog."[5] The Supreme Court has found that the government can regulate profane or non-obscene indecent speech in certain contexts. *See Sable v. F.C.C.*, 492 U.S. at 126 [109 S.Ct. at 2836] (recognizing that there is a compelling government interest in "shielding minors from the influence of literature that is not obscene by adult standards" *Id.*); *Federal Communications Commission v. Pacifica*, 438 U.S. 726, 748–50, 98 S.Ct. 3026 [3040], 57 L.Ed.2d 1073 (1978) (recognizing the government's interest in protecting minors from certain broadcasts of profane language). The Court finds that commercial speech, with its subordinate position on the scale of First Amendment values, may be an appropriate area in which the state may have a substantial interest in shielding minors from patently offensive or profane speech.

*Bad Frog*, Dec. 5, 1996, 1996 WL 705786 at *3; *see also Anheuser–Busch, Inc. v. Schmoke*, 101 F.3d 325, 329 (4th Cir.1996), *cert. denied*, ——— U.S. ———, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997) (finding the City of Baltimore had a substantial government interest in protecting minors from harmful advertising).

### 2) Encouraging Temperance and Respect for the Law

The second government interest advanced by the Defendants in support of their regulation of Plaintiff's beer label is that of temperance and respect for the law. Plaintiff concedes that these interests are legitimate interests of the State, but again argues that these interests are not explicitly set forth in the New York ABC law. As stated above, Plaintiff's argument on this point is unpersuasive. *See Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966) (the Twenty–First Amendment demands wide latitude by the state for the regulation of the use, distribution, or consumption of alcohol); *Battipaglia v. New York State Liquor Auth.*, 745 F.2d 166, 168–70 (2d Cir.1984); *44 Liquormart*, ——— U.S. at ———, 116 S.Ct. at 1509.

### B. Direct and Material Advancement of the Government Interest by the Regulation

▉▉▉ The third prong of the *Central Hudson* analysis requires the Government to prove that the regulation directly and materially advances the substantial government interests asserted. *Rubin*, 514 U.S. at 486–88, 115 S.Ct. at 1592. This burden is not satisfied by mere speculation and conjecture. Rather the Government must demonstrate that the harms it recites are real and its restriction will alleviate them in a material way. *Id.* at 487, 115 S.Ct. at 1592. While empirical evidence is important, it is possible to establish this linkage based on "history, consensus, and 'simple common sense.'" *Florida Bar v. Went For It*, 515 U.S. at 628, 115 S.Ct. at 2377 (quoting *Burson v. Freeman*, 504 U.S. 191, 211, 112 S.Ct. 1846, 1858, 119 L.Ed.2d 5 (1992)).

### 1) Profane Advertising

The Defendants argue that the asserted government interest in protecting children from exposure to profane advertising is directly and materially advanced, because absent this prohibition, the Plaintiff would market its product with the caricature at issue, all across the State of New York. This would necessarily include grocery stores and other such places that children would frequent.

The Plaintiff points to the lack of any formal findings that the Plaintiff's label

---

**5.** At the very least, minors could be exposed to the "frog" in grocery stores or other public areas in which this beer would be offered for sale.

would have an adverse affect on children. The Plaintiff cites to *44 Liquormart*, —— U.S. at ——–——, 116 S.Ct. at 1508–09; *Rubin*, 514 U.S. at 487–89, 115 S.Ct. at 1592–93; *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); and *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 73, 103 S.Ct. 2875, 2884, 77 L.Ed.2d 469 (1983) as support for its assertion that in order to establish the causal link necessary under the third prong of the *Central Hudson* test, the government must offer some evidence by way of hearings, formal findings, or independent analysis showing that there would be an adverse effect on children. The Plaintiff further argues that there is a proliferation of vulgar and profane advertising in other contexts to which the general public is already exposed. For example, the Plaintiff points to sexually suggestive beer advertising, children's toys which glorify violence, comic books and trading cards containing lurid and violent depictions, offensive product names such as "Fukola Cola," and finally a compact disk ("CD") cover with a profane gesture, similar to the one at issue, displayed on the Counting Crows' *Recovering the Satellites* CD. The Plaintiff contends that the proliferation of this type of fare casts doubt on whether the regulation of the Plaintiff's label will have any appreciable deleterious effect on today's youth.

A threshold issue in ascertaining whether the regulation of Plaintiff's label furthers the state interest in preventing the exposure of children to profane advertising is determining whether the Plaintiff's label is in fact profane. Webster's Dictionary defines profane as "blasphemous," "irreverent or vulgar." Webster's II New Riverside Dictionary 559 (1984). The Defendants assert that the Plaintiff's frog is the visual equivalent of saying "fuck you." The plaintiff at least admits that this is one of the messages attributed to the frog's gesture. *Bad Frog*, 1996 WL 705786 at *3 n. 6. Likewise, the Court finds that it is universally understood that the gesture commonly referred to as "flipping the bird" generally connotes a patently offensive suggestion. As such, the Court finds that the Plaintiff's label can properly be considered profane. Assuming,

therefore, that the Plaintiff's label is profane, the Court will next address Plaintiff's argument that the Defendants have failed to meet their burden under the third prong of the *Central Hudson* test because they have not presented formal findings or empirical evidence demonstrating that such advertising would have a deleterious effect on today's youth.

After carefully considering the authority cited by the Defendants, the Court finds that the cases requiring empirical evidence of causation deal with situations, unlike the present, where the interest advanced by the Government was only incidental or tangential to the government's regulation of speech. *See e.g., 44 Liquormart*, —— U.S. at ——–——, 116 S.Ct. at 1508–09 (the Rhode Island state government contended that banning price advertising would promote temperance); *Rubin*, 514 U.S. at 487–88, 115 S.Ct. at 1592–93 (the federal government contended that banning the alcoholic content on beer would prevent "strength wars"); *City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410, 428, 113 S.Ct. 1505, 1516, 123 L.Ed.2d 99 (the city of Cincinnati contended that the ban of commercial handbill news racks advanced the interest of promoting safety and aesthetics on the city's public sidewalks); *Bolger*, 463 U.S. 60, 73, 103 S.Ct. 2875, 2884, 77 L.Ed.2d 469 (1983) (the federal government contended that a ban on the unsolicited mass mailing of contraceptive advertisements would advance the government's interest in aiding parents' efforts to discuss birth control with their children). In each of these cases, the Supreme Court found it problematic to establish a causal link between the government regulation and the government interest asserted. However, in other decisions where the link between the regulation and the government interest advanced is self evident, the Court has required less. *See e.g., Florida Bar*, 515 U.S. at 625–627, 115 S.Ct. at 2377 (the Court relied on mostly anecdotal evidence to find that thirty day ban of direct-mail legal solicitation following accidents directly and materially advanced the government's interest in upholding the reputation of the legal profession); *Posadas De Puerto Rico Assoc. v. Tourism Co.*, 478 U.S. 328,

341–42, 106 S.Ct. 2968, 2976–77, 92 L.Ed.2d 266 (1986) ( the Court found that it was reasonable to believe that a ban on casino advertising would advance the interest of decreasing the demand for gambling). Here, while the Defendants have offered no studies or empirical evidence supporting the finding of a causal link, common sense requires this Court to conclude that the prohibition of the use of the profane image on the label in question will necessarily limit the exposure of minors in New York to that specific profane image. Thus, to that extent, the asserted government interest in protecting children from exposure to profane advertising is directly and materially advanced.

### 2) Encouraging Temperance and Respect for the Law

■ The Defendants argue that the Plaintiff's label encourages underage drinking because it targets a younger, more immature audience. Further, the Defendants argue that the Plaintiff's message reinforces, to adults and minors alike, an attitude of disrespect for authority and disrespect for the law.

Plaintiff contends that the NYSLA has not conducted any hearings, nor made any findings which would substantiate their assertion that Plaintiff's beer label would either promote the irresponsible use of alcohol or that Plaintiff's label would somehow encourage underage drinking. The Plaintiff points to the existence of other so-called marketing gimmicks for beer such as the "Budweiser Frogs," "Spuds Mackenzie," the "Bud–Ice Penguins," and the "Red Dog" of Red Dog Beer as virtually indistinguishable from the Plaintiff's frog. Plaintiff argues that these figures promote intemperate behavior in the same way that the Defendants have alleged Plaintiff's label would. Thus, because there is a proliferation of these types of so-called marketing gimmicks, the Plaintiff posits that regulation of the Plaintiff's label will have no tangible effect on underage drinking or intemperate behavior in general.

With respect to this asserted interest, the Court finds that, at best, the Defendants' arguments on the causes of intemperate behavior and underage drinking offers only speculative or anecdotal evidence. Even if the Court is called upon to use its "common sense" in this instance, it is hard pressed make a logical connection between prohibiting Plaintiff's label and promoting temperate behavior, discouraging underage drinking, or promoting respect for the law. Other than its offensive content, Plaintiff's label does not send any message which could be rationally found to encourage those not already predisposed to consume alcohol or break the law to suddenly forgo their temperate and law abiding ways. Thus, the Court finds that there is insufficient evidence to support the contention that prohibiting Plaintiff's label directly and materially advances the substantial government interest in temperance and respect for the law.

### C. The Regulation Must Be Narrowly Drawn

The fourth prong of the *Central Hudson* analysis requires the regulation be no more extensive than necessary to accomplish the government interest advanced. *Central Hudson*, 447 U.S. at 569, 100 S.Ct. at 2353. The Defendants argue that there is a "reasonable fit" between the State's interest in shielding minors from profane advertising and the regulation of Plaintiff's label. The Defendants assert that the approval of Plaintiff's label would necessarily allow the Plaintiff to distribute and sell their product throughout New York displaying the profane image on both packaging and display advertising. Defendants further contend that denial of Plaintiff's label application in no way prevents the Plaintiff from selling its product in New York with a modified label that is within acceptable standards.

The Plaintiff argues that there are numerous more direct and tailored ways the state could advance its interest. For example, the NYSLA could have limited dissemination of the labels through (1) point of sale location limitations, (2) limitations on billboard and display advertising, (3) restrictions on over the air advertising, or (4) segregation of the product in one part of the store where access can be controlled. Plaintiff argues that the State of Michigan imposed similar restrictions on the sale of Bad Frog Beer. Additionally, the Plaintiff cites to *Anheuser–Busch,*

287

*Inc. v. Schmoke,* where the Fourth Circuit approved a ban on Billboard advertising of alcohol which was narrowly tailored to apply to outdoor advertising and allowed exceptions for certain parts of the city where children were less likely to frequent. 101 F.3d at 327.

 The fit that is required between the regulation of commercial speech and the substantial interest advanced is not equivalent to the "least restrictive means" test used when core political speech is at issue, rather it is an intermediate level of scrutiny which requires only a "reasonable fit" between the asserted interest and the means chosen to achieve it. *Board of Trustees v. Fox,* 492 U.S. 469, 479, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989). This is a "fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition, but one whose scope is in proportion to the interest served." *Id.* (citing *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)). This standard necessarily provides some leeway to the legislative and executive branches in the field of regulating commercial speech. *Id.* Further, when evaluating the "regulation" at issue under the fourth prong, the Court must conduct its analysis in light of the factual circumstances at hand. *Id.* at 481, 109 S.Ct. at 3035; *United States v. Edge Broadcasting, Inc.,* 509 U.S. 418, 429–30, 113 S.Ct. 2696, 2704–05, 125 L.Ed.2d 345 (1993).

While Plaintiff's proposed advertising limitations would limit the exposure of youth to the Plaintiff's profane label, the NYSLA's denial of their label application completely forecloses the possibility. Such is a legitimate and reasonable alternative in light of the eventual distribution and dissemination of Plaintiff's products.[6] Thus, the Court finds that there is a reasonable fit between means employed by the NYSLA, i.e., the denial of Plaintiff's label application, and the State's interest in regulating the exposure of minors to vulgar or profane advertising.

Furthermore, an important distinction must be drawn between this case and the cases cited by the Plaintiff in which the Supreme Court has found a regulation of commercial speech to be unconstitutional under the fourth prong of the *Central Hudson* test. In recent cases, such as *44 Liquormart* and *Rubin v. Coors,* the Supreme Court was highly concerned with the Government denial of consumer access to accurate, non-misleading information about the products which would assist the consumer in making an informed purchase. —— U.S. at ——, 116 S.Ct. at 1507; 514 U.S. at 483–86, 115 S.Ct. at 1590–91, respectively. In these cases, the Court evaluated whether less restrictive means could be employed to achieve the desired government ends while still maximizing the information available to the consumers. *Id.* Here, New York State is regulating a strictly superficial aspect of commercial advertising of no value to the consumer in making an informed purchase. The State's determination that the depiction of the frog on the Plaintiff's label is profane and vulgar, such that it should be prohibited, is a regulation whose scope is well within proportion to the governmental interest in protecting minors from vulgar and profane advertising. The Court finds, therefore, that Defendants' denial of the Plaintiff's label application was not violative of the First Amendment, and that Plaintiff's claims based thereon are dismissed.

## II. VAGUENESS CHALLENGE

Plaintiff's second cause of action challenges 9 N.Y.C.R.R. § 83.3, the New York State regulation relied on by the NYSLA as authority for their decision to deny the Plaintiff's label applications, as unconstitutionally vague. Section 83.3 provides, in relevant part,

Such signs shall not contain . . . any statement, design, device, matter or representation which is obscene or indecent or which is obnoxious or offensive to the commonly and generally accepted standard of fitness and good taste.

6. The Court also merits the Plaintiff's argument that there is a proliferation of other equally offensive products being sold in New York which could conceivably have a harmful effect on our youth. However, as the Defendants correctly point out, those particular products are not before the Court at this time.

9 N.Y.C.R.R. § 83.3(2)(iii). Plaintiff alleges that this regulation is so vague it confers unfettered discretion on state officials to prohibit constitutional commercial speech.

■ A regulation of speech is void for vagueness if it "fails to give persons of ordinary intelligence fair notice that their contemplated conduct is proscribed" by the regulation. *Marty's Adult World of Enfield, Inc. v. Town of Enfield, Conn.*, 20 F.3d 512, 515 (2d Cir.1994).

■ The Court notes that the term "obnoxious," if taken alone, could push the envelope of unconstitutional vagueness. However, if taken in context of the sentence "obnoxious or offensive to the commonly and generally accepted standards of fitness and good taste," the scope of the conduct proscribed is sufficiently clear, and fairly puts a reasonable beer distributor on notice that vulgar or profane language will be prohibited in the context of beer advertising. Therefore, the Court finds that 9 N.Y.C.R.R. § 83.3 is not unconstitutionally vague, and grants the Defendants summary judgment on the Plaintiff's second cause of action.

## III. STATE CLAIMS

In our previous decision, the Court determined that the Plaintiffs remaining three causes of action premised on a violation of the New York State Constitution and State statutory law were barred by the Eleventh Amendment insofar as they were brought against the State of New York and the individual defendants in their official capacity. *Bad Frog*, 1996 WL 705786 at *5. The Plaintiff argues that it is still entitled to summary judgment on two of the three state claims insofar as they seek damages from the individual Defendants in their individual capacities.

The jurisdiction of this Court over these state claims is supplemental premised on 28 U.S.C. § 1367(c). As the Court has determined that the Plaintiff's federal claims should be dismissed, the Court declines to exercise supplemental jurisdiction over any state claims which remain. *See Maric v. St. Agnes Hosp. Corp. et al.*, 65 F.3d 310, 314 (2d Cir.1995), *cert. denied,* — U.S. —, 116

S.Ct. 917, 133 L.Ed.2d 847 (1996) (stating the Second Circuit's preference towards remanding pendent state claims when all federal claims have been dismissed prior to trial).

### Conclusion

Therefore, after reviewing the parties' submissions, the entire record, and the applicable law, it is hereby

ORDERED that the Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's federal claims, and those claims are DISMISSED. It is further

ORDERED that the Plaintiff's state claims brought against the state and the individual Defendants in their official capacity are DISMISSED. It is further

ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims and they are thereby DISMISSED.

**IT IS SO ORDERED.**