**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

June 28, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SEATTLE EVENTS, a Washington Nonprofit Corporation, MULTIVERSE HOLDINGS, LLC, a Washington Limited Liability Company, and UNIVERSAL HOLDINGS, LLC, a Washington Limited Liability Company, | No. 55475-5-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON, The WASHINGTON STATE LIQUOR AND CANNABIS BOARD (WSLCB), an agency of the State of Washington, and the members of the WSLCB, JANE RUSHFORD, OLLIE GARRET, RUSS HAUGE, in their official capacities only, and RICK GARZA, Director of the WSLCB, in his official capacity, only, | PUBLISHED OPINION |
| Respondents. | |

LEE, J. — Seattle Events, Multiverse Holdings, LLC, and Universal Holdings, LLC (collectively Seattle Events) unsuccessfully challenged statutory and regulatory restrictions on marijuana advertising. Seattle Events appeals the superior court's order finding that the challenged marijuana advertising restrictions do not violate the Washington or United States Constitution, granting summary judgment dismissal of all claims against the State, denying Seattle Events' cross-motion for summary judgment, and denying Seattle Events' motion for reconsideration of its summary judgment order. Seattle Events argues that the superior court erred by failing to apply a more protective analysis under the Washington Constitution, by failing to apply strict scrutiny,

No. 55475-5-II

and by finding that the challenged restrictions satisfy the traditional *Central Hudson*[1] test for commercial speech.

We hold that the superior court did not err by not applying a more protective analysis under the Washington Constitution, by not applying strict scrutiny, or by finding that the challenged restrictions satisfy the traditional *Central Hudson* test for commercial speech. Therefore, we affirm both the superior court's order granting the State's summary judgment motion for dismissal of all claims against the State and denying Seattle Events' cross-motion for summary judgment and the superior court's order denying Seattle Events' motion for reconsideration.

FACTS

A.      BACKGROUND—STATUTORY SCHEME FOR MARIJUANA ADVERTISING

In 2012, Washington voters passed Initiative 502, which allows licensed retailers to sell marijuana to consumers. Initiative 502, LAWS OF 2013, ch. 3. Initiative 502 required the Liquor and Cannabis Board (Board) to create "reasonable time, place, and manner restrictions and requirements regarding advertising of marijuana, useable marijuana, and marijuana-infused products." LAWS OF 2013, ch. 3, § 10(9). The initiative stated that these restrictions should be designed to "[m]inimiz[e] exposure of people under twenty-one years of age to [marijuana] advertising." LAWS OF 2013, ch. 3, § 10(9)(b).

---

[1] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).

No. 55475-5-II

The legislature enacted restrictions on marijuana advertising in 2013 and amended those restrictions in 2017. *See* former RCW 69.50.369 (2017).[2] As relevant here, these amended restrictions include a ban on marijuana advertising within 1,000 feet of schools, playgrounds, recreation centers, child care centers, parks, libraries, and game arcades, unless that location is restricted to people aged 21 or older. Former RCW 69.50.369(1).[3] Further, outdoor signs are prohibited in arenas, stadiums, shopping malls, fairs that receive state allocations, farmers markets, and video game arcades, unless that location is restricted to adults. Former RCW 69.50.369(7)(b)(i).[4]

---

[2] Former RCW 69.50.369 (2017) is the version of the statute in effect at the time Seattle Events filed its second amended complaint challenging the statute. The new version of the statute has no substantive changes and only replaces the term "marijuana" with "cannabis." LAWS OF 2022, ch. 16, § 75. Accordingly, we cite to the former RCW 69.50.369 (2017) version of the statute in this opinion.

[3] Specifically, former RCW 69.50.369(1) provides that

> [n]o licensed marijuana producer, processor, researcher, or retailer may place or maintain, or cause to be placed or maintained, any sign or other advertisement for a marijuana business or marijuana product, including useable marijuana, marijuana concentrates, or marijuana-infused product, in any form or through any medium whatsoever within one thousand feet of the perimeter of a school grounds, playground, recreation center or facility, child care center, public park, or library, or any game arcade admission to which is not restricted to persons aged twenty-one years or older.

[4] Former RCW 69.50.369(7)(b) provides that

> [o]utdoor advertising is prohibited:
> (i) On signs and placards in arenas, stadiums, shopping malls, fairs that receive state allocations, farmers markets, and video game arcades, whether any of the foregoing are open air or enclosed, but not including any such sign or placard located in an adult only facility; and
> (ii) Billboards that are visible from any street, road, highway, right-of-way, or public parking area are prohibited, except as provided in (c) of this subsection.

3

No. 55475-5-II

However, licensed retail stores can use billboards or outdoor signs that state the business name, nature of the business, and directions to the business. Former RCW 69.50.369(7)(c).[5] And the restrictions on outdoor advertising do not apply to brand name advertisements at facilities that are being used for adult-only events or to in-store advertisements, as long as those advertisements are not in a window facing outward. Former RCW 69.50.369(7)(e).[6]

When enacting the 2017 amendments, the legislature made the following findings:

The legislature finds that protecting the state's children, youth, and young adults under the legal age to purchase and consume marijuana, by establishing limited restrictions on the advertising of marijuana and marijuana products, is necessary to assist the state's efforts to discourage and prevent underage consumption and the potential risks associated with underage consumption. The legislature finds that these restrictions assist the state in maintaining a strong and effective regulatory and enforcement system as specified by the federal government. The legislature finds this act leaves ample opportunities for licensed marijuana businesses to

---

[5] Former RCW 69.50.369(7)(c) provides that

[l]icensed retail outlets may use a billboard or outdoor sign solely for the purpose of identifying the name of the business, the nature of the business, and providing the public with directional information to the licensed retail outlet. Billboard advertising is subject to the same requirements and restrictions as set forth in (a) of this subsection.

[6] Former RCW 69.50.369(7)(e) provides that

[t]he restrictions and regulations applicable to outdoor advertising under this section are not applicable to:
    (i) An advertisement inside a licensed retail establishment that sells marijuana products that is not placed on the inside surface of a window facing outward; or
    (ii) An outdoor advertisement at the site of an event to be held at an adult only facility that is placed at such site during the period the facility or enclosed area constitutes an adult only facility, but in no event more than fourteen days before the event, and that does not advertise any marijuana product other than by using a brand name to identify the event.

4

No. 55475-5-II

market their products to those who are of legal age to purchase them, without infringing on the free speech rights of business owners. Finally, the legislature finds that the state has a substantial and compelling interest in enacting this act aimed at protecting Washington's children, youth, and young adults.

LAWS OF 2017, ch. 317, § 12.

The Board issued parallel regulations providing that marijuana advertisements cannot be placed within 1,000 feet of school grounds, playgrounds, recreation centers, child care centers, parks, libraries, or game arcades unless the location is restricted to persons aged twenty-one or older, or if a physical marijuana store exists within that 1,000 feet buffer. WAC 314-55-155(1)(b)(i).[7] In addition, the regulations provide that marijuana businesses can display two permanent outdoor signs at their store, as long as the signs are each 1,600 square inches or less and only state the name, nature, and location of the business. WAC 314-55-155(2)(a)(i).[8] The

---

[7] WAC 314-55-155(1)(b)(i) provides that

> [n]o marijuana licensee shall place or maintain, or cause to be placed or maintained, an advertisement of a marijuana business or marijuana product, including marijuana concentrates, useable marijuana, or marijuana-infused product:
> (i) In any form or through any medium whatsoever within one thousand feet of the perimeter of a school grounds, playground, recreation center or facility, child care center, public park, library, or a game arcade admission to which it is not restricted to persons aged twenty-one years or older unless the one thousand minimum distance requirement has been reduced by ordinance in the local jurisdiction where the licensed retailer is located and the licensed retailer is located within one thousand feet of a restricted location listed in this paragraph.

[8] WAC 314-55-155(2)(a)(i) provides that

> [e]xcept for the use of billboards as authorized under RCW 69.50.369 and as provided in this section, licensed marijuana retailers may not display any outdoor signage other than two separate signs identifying the retail outlet by the licensee's business name or trade name, stating the location of the business, and identifying the nature of the business. Both signs must be affixed to a building or permanent structure and each sign is limited to sixteen hundred square inches.

No. 55475-5-II

regulations also allow marijuana advertising signage at adult-only events, as long as those signs are not visible outside the event and only state the brand's name. WAC 314-55-155(2)(d).[9]

B.      EVENTS LEADING UP TO SEATTLE HEMPFEST 2019

Seattle Events, individually, is a nonprofit organization and does business as Seattle Hempfest. Multiverse Holdings, LLC, and Universal Holdings, LLC, are licensed marijuana retailers.

Seattle Hempfest's annual production cost is paid in part by donations and contributions. Other parts of the production cost are paid by vendors who rent space at the event and advertise their businesses, subject to compliance with state and city regulations.

In April 2019, the Board issued Bulletin 19-01 (later withdrawn and superseded), which stated that marijuana businesses could not advertise in certain locations. This bulletin cited RCW 69.50.369 and WAC 314-55-155, and stated that marijuana licensees "cannot have any sign or advertisement at any event, if the event is located at or within 1,000 feet of one of the listed

---

(i) All text on outdoor signs, including billboards, is limited to text that identifies the retail outlet by the licensee's business or trade name, states the location of the business, and identifies the type or nature of the business.

[9] WAC 314-55-155(2)(d) provides that

[t]he restrictions in this section and RCW 69.50.369 do not apply to outdoor advertisements at the site of an event to be held at an adult only facility that is placed at such site during the period the facility or enclosed area constitutes an adult only facility, but must not be placed there more than fourteen days before the event, and that does not advertise any marijuana product other than by using a brand name, such as the business or trade name or the product brand, to identify the event. Advertising at adult only facilities must not be visible from outside the adult only facility.

No. 55475-5-II

restricted areas." Clerk's Papers (CP) at 44. The bulletin also noted that there was an exception under former RCW 69.50.369(7)(e)(ii) that allows outdoor advertisements at adult-only facilities.

Multiverse and Universal both wanted to support Seattle Hempfest 2019 as contributors and have booths at the event. But due to Bulletin 19-01, Multiverse and Universal were unsure whether their booth could bear their business names, logos, or address without violating former RCW 69.50.369 or WAC 314.55.155. Other sponsors and participants expressed similar concerns and chose to not participate in Seattle Hempfest 2019. Ultimately, Multiverse and Universal participated in Seattle Hempfest 2019.

C.    PROCEDURAL HISTORY

Seattle Events sued the State, the Board, and several Board members when Bulletin 19-01 was still in effect. An amended complaint filed on June 10, 2019 challenged the portion of former RCW 69.50.369 that created restrictions on "'any sign or other advertisement,'" especially as applied by the Board to political speech. CP at 10. Seattle Events sought a preliminary injunction against the Board's enforcement of Bulletin 19-01 at Hempfest.

After the suit was filed, the Board issued Bulletin 19-03, which superseded Bulletin 19-01, in June 2019.[10]  Bulletin 19-03 clarified that non-commercial speech was exempt from the advertising restrictions. The parties stipulated that Bulletin 19-03 resolved issues raised in Seattle Events' motion for preliminary injunction.

Seattle Events filed a second amended complaint in January 2020. This second amended complaint no longer challenged the Board's bulletins and instead squarely challenged former RCW

---

[10]  https://content.govdelivery.com/accounts/WALCB/bulletins/24dbbf0 [https://perma.cc/N7PQ-WKJ2]

7

No. 55475-5-II

69.50.369(1) and (7)(b) and (e), along with WAC 314-55-155(1)(a)(iii), (1)(b)(i), (2)(a)(i), and (2)(d). The second amended complaint sought injunctive relief under the First Amendment to the United States Constitution and article I, sections 1, 4, and 5 of the Washington Constitution.

The parties filed cross-motions for summary judgment. Both parties argued that the *Central Hudson* test for commercial speech under the First Amendment applied. The superior court granted summary judgment in favor of the State "for the reasons articulated by the [State], with the sole exception being that the Court finds that the regulations at issue are of a 'lawful activity.'" CP at 575. Seattle Events filed a motion for reconsideration, which the superior court denied.

Seattle Events sought direct review from our Supreme Court.[11] Our Supreme Court transferred the case to this court.[12]

## ANALYSIS

A. STANDARD OF REVIEW

We review a superior court's order granting summary judgment de novo and engage in the same inquiry as the trial court. *Crisostomo Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A material fact is one upon which the outcome of the litigation depends. *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015).

---

[11] Statement of Grounds for Direct Review (Corrected) at 5 (Sept. 18, 2020).

[12] Order (Jan. 6, 2021).

No. 55475-5-II

Here, there are no genuine issues of material fact and the State is entitled to judgment as a matter of law.

B.       COMMERCIAL SPEECH ANALYSIS UNDER ARTICLE I, SECTION 5

Seattle Events argues that the superior court erred by failing to apply a heightened standard for commercial speech claims under the state constitution because article I, section 5 of the Washington Constitution provides broader protections for commercial speech than the First Amendment. Further, Seattle Events argues that this court should perform a *Gunwall*[13] analysis to determine the scope of that broader protection and then apply a new proposed test for commercial speech.[14] We disagree.

---

[13]  *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[14]  We note that Seattle Events makes arguments on appeal that are contrary to the arguments they made in the superior court. Seattle Events argues on appeal that Washington Constitution article I, section 5 provides broader protections for commercial speech than the First Amendment. Further, Seattle Events argues that this court should perform a *Gunwall* analysis to determine the scope of that broader protection and then apply a new proposed test for commercial speech.

However, in the superior court, Seattle Events did not argue that the state constitution provides broader protection for commercial speech than the United States Constitution. And Seattle Events neither presented a *Gunwall* analysis nor proposed a new test for commercial speech regulations to the superior court. Instead, Seattle Events argued in its motion for summary judgment that commercial speech regulations must satisfy the federal constitutional analysis and explicitly stated that "Washington follows the *Central Hudson* test." CP at 378. And in its brief opposing summary judgment below, Seattle Events stated that "Plaintiffs do not advance a *Gunwall* analysis that state and federal constitutional analyses differ. Plaintiffs accept that Art. 1, § 5 of the Washington Constitution . . . involves the same *Central Hudson* and *Lorillard* tests as the First Amendment for commercial speech." CP at 449-50 (footnote omitted). Because Seattle Events did not argue below that the state constitution provides broader protections for commercial speech than the federal constitution, that issue was not called to the attention of the superior court.

We look with disfavor on a party taking a contrary position on appeal than that argued below. Under RAP 9.12, appellate courts reviewing summary judgment orders "will consider only evidence and issues called to the attention of the trial court." However, the State has not argued

9

No. 55475-5-II

Article I, section 5 does not require a more protective analysis for commercial speech than the First Amendment. *See State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 23-24, 436 P.3d 857, *review denied*, 193 Wn.2d 1040 (2019), *cert. denied*, 141 S. Ct. 234 (2020). In *Living Essentials*, the appellants argued that the court should apply a *Gunwall* analysis to determine whether commercial speech receives greater protections under article I, section 5 than the First Amendment. *Id.* The court held that "our Supreme Court has already answered that question regarding commercial speech," declined to undergo the *Gunwall* analysis, and instead applied the *Central Hudson* test. *Id.* at 23-25.

In its reasoning, the *Living Essentials* court relied on *National Federation of Retired Persons v. Insurance Commissioner*, 120 Wn.2d 101, 838 P.2d 680 (1992). *Id.* at 23-34. In *National Federation of Retired Persons*, our Supreme Court determined that because "Washington case law provides no clear rule for constitutional restrictions on commercial speech . . . [w]e therefore follow the interpretative guidelines under the federal constitution." 120 Wn.2d at 119 (footnotes omitted). The *Living Essentials* court also cited to *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 116, 937 P.2d 154 (1997) (plurality opinion). *Living Essentials*, 8 Wn. App. 2d at 24. In *Ino Ino*, a plurality of our Supreme Court stated that "[t]he federal analysis also applies when confronting art. I, § 5 challenges to regulations of commercial speech." 132 Wn.2d at 116.

---

judicial estoppel, and given the constitutional issue presented, we reach the merits of this challenge.

No. 55475-5-II

Here, like in *Living Essentials*, Seattle Events argues that we should perform a *Gunwall* analysis and apply a more protective test for commercial speech under article I, section 5.[15] However, our Supreme Court has already determined that the federal constitutional analysis applies to commercial speech claims made under article I, section 5. *See Ino Ino*, 132 Wn.2d at 116; *Nat'l Fed'n of Retired Persons*, 120 Wn.2d at 119. Therefore, Seattle Events' argument that the state constitution requires the application of a different standard for commercial speech than under the federal constitution fails.

C.      STRICT SCRUTINY NOT APPLICABLE TO COMMERCIAL SPEECH AT ISSUE

Seattle Events argues that the superior court erred by failing to apply strict scrutiny because *Barr v. American Ass'n of Political Consultants, Inc.*[16] and *Sorrell v. IMS Health Inc.*[17] require the application of strict scrutiny to their First Amendment challenge. We disagree.

Courts apply a four-part test to First Amendment challenges to commercial speech regulations. *Central Hudson*, 447 U.S. at 566. This test asks whether (1) the speech being restricted concerns lawful activity and is not misleading, (2) the asserted governmental interest is substantial, (3) the regulation directly advances that governmental interest, and (4) the regulation is not more extensive than necessary to serve that interest. *Id.* Our Supreme Court has adopted

---

[15] Seattle Events contends that non-misleading commercial speech is subject to a different analysis under the state constitution. But Washington courts have held that commercial speech does not receive a more protective analysis under Washington Constitution article I, section 5, and no Washington court has carved out an exception for speech that is not misleading. *See Ino Ino*, 132 Wn.2d at 116; *Nat'l Fed'n of Retired Persons*, 120 Wn.2d at 119; *Living Essentials*, 8 Wn. App. 2d at 23-25.

[16] 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (plurality opinion).

[17] 564 U.S. 552, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011).

11

No. 55475-5-II

*Central Hudson*'s four-part test. *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 512, 104 P.3d 1280 (2005) (plurality opinion).[18]

Seattle Events contends that we should depart from the four-part test outlined in *Central Hudson* to determine its First Amendment challenge. Seattle Events relies on *Barr* and *Sorrell* to support its contention.

In *Barr*, the challenged restriction banned almost all robocalls made to cell phones with few exceptions, one of which was for calls about collecting government debt. 140 S. Ct. at 2344-45. The plaintiffs wanted to perform political outreach using robocalls made to cell phones, but the challenged restriction prohibited that outreach. *Id.* at 2345. The lead plurality opinion applied strict scrutiny and held that the challenged restriction was unconstitutional because it favored the content of government debt collection calls over other speech content, including the plaintiffs' political speech. *Id.* at 2346-47. The lead plurality opinion explicitly stated that the decision is limited to robocalls made to cell phones and that the "decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity." *Id.* at 2347. Therefore, *Barr* does not alter the commercial speech analysis that should be applied in this case.

In *Sorrell*, the United States Supreme Court reviewed a law prohibiting the sale, disclosure, and use of certain prescriber-identifying pharmacy records for marketing purposes, but allowing those records to be used for other purposes. 564 U.S. at 557, 562. The Court considered the impact

---

[18] We acknowledge that *Kitsap County v. Mattress Outlet* is a plurality opinion. However, both the lead plurality opinion and dissent relied on the *Central Hudson* test for their respective positions. *Mattress Outlet*, 153 Wn.2d at 512 (lead opinion of Ireland, J.), 519 (dissenting opinion of Madsen, J.).

No. 55475-5-II

of the law on pharmaceutical manufacturers, who were prohibited from using prescriber-identifying pharmacy records for marketing and selling their products to physicians. *Id.* at 564. The Court held that the restriction was content-based because it disfavored marketing, and it was speaker-based because it disfavored pharmaceutical manufacturers. *Id.* The Court noted that, because the statute's restrictions were content- and speaker-based, they required "heightened scrutiny." *Id*. at 565. The Court stated that this "heightened scrutiny" applies even for commercial speech claims. *Id.* at 566. The "heightened scrutiny" applied by the Court was the *Central Hudson* test. *Id.* at 572 ("[T]he State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.").[19] Thus, *Sorrell* does not change the commercial speech analysis that should be applied here.

Seattle Events also briefly cites three other cases in support of its argument that strict scrutiny should apply. However, these cases did not concern restrictions on commercial speech specifically or include a commercial speech analysis and, therefore, are unpersuasive. *See Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) (restrictions for political, ideological, and temporary event signs); *City of Lakewood v. Willis*, 186 Wn.2d 210, 375 P.3d 1056 (2016) (plurality opinion) (anti-"begging" ordinance); *Collier v. City of Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993) (ordinance prohibiting public signage and restricting political signs).

Because Seattle Events has not identified a compelling reason to depart from application of the traditional *Central Hudson* four-part test for commercial speech claims made under the First

---

[19] The United States Court of Appeals for the Ninth Circuit has confirmed that "*Sorrell* did not modify the *Central Hudson* standard." *Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 841 (9th Cir. 2017).

No. 55475-5-II

Amendment and to apply strict scrutiny instead, the superior court did not err by not applying strict scrutiny.

D.      COMMERCIAL SPEECH ANALYSIS UNDER *CENTRAL HUDSON*

Seattle Events argues that the superior court erred by concluding that the challenged restrictions satisfy the traditional *Central Hudson* test for commercial speech regulations. We disagree.

"The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson*, 447 U.S. at 562-63. Commercial speech restrictions must pass a four-step analysis:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566; *see Mattress Outlet*, 153 Wn.2d at 512, 519 (adopting four-part *Central Hudson* test).

Here, neither party disputes that the speech, marijuana advertising, is commercial in nature. Therefore, the *Central Hudson* analysis applies.

1.      The Restricted Speech Concerns Lawful Activity And Is Not Misleading

First, to receive First Amendment protections, the commercial speech "must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566.[20] There does not appear

---

[20] The legislature assumed that licensed marijuana retailers would receive First Amendment protections for their advertisements when drafting the challenged advertising restrictions. LAWS OF 2017, ch. 317, § 12 ("The legislature finds this act leaves ample opportunities for licensed marijuana businesses to market their products to those who are of legal age to purchase them, without infringing on the free speech rights of business owners.").

No. 55475-5-II

to be binding case law explicitly holding that advertising for activity that is legal under state law and illegal under federal law is "lawful" for the purposes of the *Central Hudson* test.

The United States Court of Appeals for the First Circuit considered a similar question in dicta. *See New England Accessories Trade Ass'n, Inc. v. City of Nashua*, 679 F.2d 1 (1st Cir. 1982). In *New England Accessories*, the First Circuit heard a First Amendment challenge to a New Hampshire statute making it illegal to place drug paraphernalia advertisements outside of the state, even if the sale of drug paraphernalia was legal in other states. *Id.* at 3. The court held that drug paraphernalia advertising did not receive First Amendment protections because it promoted illegal ingestion of drugs, which was "criminal in all jurisdictions." *Id.* But the First Circuit noted in dicta that "[i]f New York, or some other state, decided to legalize the sale and use of marijuana, New Hampshire would have greater difficulty . . . prohibiting an advertisement" pertaining to marijuana. *Id.* at 4. This statement implies that the court would extend constitutional protection to advertising for activities that are legal in the state where the transaction would occur. That implication is further bolstered by *Washington Mercantile Ass'n v. Williams*, where the United States Court of Appeals for the Ninth Circuit held that

> [s]ale or delivery of drug paraphernalia is illegal in Washington, so advertisements for sales in or mail orders from Washington are unprotected speech. In contrast, the advertiser who proposes a transaction in a state where the transaction is legal is promoting a legal activity. Its speech deserves First Amendment protection.

733 F.2d 687, 691 (9th Cir. 1984) (citations omitted).

On the other hand, the Montana Supreme Court has held that medical marijuana advertising does not concern lawful activity and, therefore, is not afforded constitutional protection. *Mont.*

15

No. 55475-5-II

*Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 66, 382 Mont. 256, 368 P.3d 1131, *cert. denied*, 579 U.S. 930 (2016). The court reasoned that

> [b]ecause federal law governs the analysis of this issue, we conclude that an activity that is not permitted by federal law—even if permitted by state law—is not a "lawful activity" within the meaning of *Central Hudson*'s first factor. As such, the advertisement of marijuana is not speech that concerns lawful activity. There is no First Amendment violation and our analysis under *Central Hudson* therefore ends here.

*Id.* In *Montana Cannabis*, the plaintiffs "rel[ied] exclusively on federal law in their argument on this issue" and did not bring a claim under the free speech provision of the Montana Constitution. *Id.* at ¶ 65.

The sale of marijuana remains illegal under federal law. 21 U.S.C. §§ 812(c)(c)(10), 841. In addition to a challenge under the federal constitution, Seattle Events brought claims under the state constitution, which invokes state law. Therefore, this case is distinguishable from *Montana Cannabis*, where the appellants relied solely on the protections of the United States Constitution and invoked only federal law. *See* 2016 MT at ¶ 65.

Here, the licensed sale of marijuana is legal in Washington. Former RCW 69.50.325(1) (2018).[21] And the commercial speech at issue proposes marijuana transactions within Washington. Because existing case law supports extending constitutional protections to advertising for activities that are legal in the state where the transaction would occur, we hold that restricted marijuana advertising from licensed retailers in Washington concerns lawful activity. *See Wash. Mercantile*, 733 F.2d at 691; *New England Accessories*, 679 F.2d at 4.

---

[21] RCW 69.50.325 was amended in 2020 and again in 2022. Because there are no substantive changes to the statute affecting this opinion, we cite to the former RCW 69.50.325 (2018) version of the statute.

16

No. 55475-5-II

Also, no party argues that the speech is misleading. Therefore, because the restricted commercial speech, marijuana advertising, concerns lawful activity and is not misleading, the restricted commercial speech satisfies the first step of the *Central Hudson* test in determining whether the challenged restrictions receive constitutional protection. *See Central Hudson,* 447 U.S. at 566.

2.        Preventing Minors From Using Marijuana Is A Substantial Governmental Interest

The second step of the *Central Hudson* test asks "whether the asserted governmental interest is substantial." *Id.*

The State has a "compelling interest in protecting the physical, mental and emotional health" of children. *In re Dependency of H.W.*, 70 Wn. App. 552, 555, 854 P.2d 1100 (1993). Courts outside of Washington have found that preventing underage tobacco and alcohol use constitute substantial state interests. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 564, 121 S. Ct. 2404, 150 L. Ed. 2d 532 (2001) (acknowledging substantial governmental interest in preventing underage tobacco use); *Anheuser-Busch, Inc. v. Schmoke*, 101 F.3d 325, 329-30 (4th Cir. 1996) (upholding restrictions on alcohol advertising based on State's interest in protecting children from underage drinking), *cert. denied*, 520 U.S. 1204 (1997).

Here, when enacting the challenged restrictions, the legislature explicitly stated its interest in preventing underage marijuana consumption:

> The legislature finds that protecting the state's children, youth, and young adults under the legal age to purchase and consume marijuana, by establishing limited restrictions on the advertising of marijuana and marijuana products, is necessary to assist the state's efforts to discourage and prevent underage consumption and the potential risks associated with underage consumption. . . . Finally, the legislature finds that the state has a substantial and compelling interest in enacting this act

17

No. 55475-5-II

aimed at protecting Washington's children, youth, and young adults. LAWS OF 2017, ch. 317, § 12.

Seattle Events does not dispute that the State has an interest in preventing youth marijuana use. Like the State's interest in preventing underage tobacco and alcohol use, the State has a substantial interest in preventing underage marijuana use and thereby protecting children's health. *See Lorillard*, 533 U.S. at 564; *Anheuser-Busch*, 101 F.3d at 329-30; *H.W.*, 70 Wn. App. at 555. Therefore, the State has asserted a substantial government interest in preventing underage marijuana use and satisfies the second step of the *Central Hudson* test. *See Central Hudson,* 447 U.S. at 566.

3.      The Challenged Restrictions Directly Advance The Governmental Interest

*Central Hudson*'s third step requires courts to ask if the challenged restrictions "directly advance[] the governmental interest." *Id.* To satisfy this step, the State "'must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Lorillard*, 533 U.S. at 555 (internal quotation marks omitted) (quoting *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188, 119 S. Ct. 1923, 144 L. Ed. 2d 161 (1999)). A restriction can be justified at this step "by reference to studies and anecdotes pertaining to different locales altogether" or by "history, consensus, and 'simple common sense.'" *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628, 115 S. Ct. 2371, 132 L. Ed. 2d 541 (1995) (quoting *Burson v. Freeman*, 504 U.S. 191, 211, 112 S. Ct. 1846, 119 L. Ed. 2d 5 (1992) (plurality opinion)).

The record contains several sources that show advertisements for certain substances are linked to underage use of that substance. Both Congress and the United States Supreme Court have connected tobacco advertising to underage tobacco use. *See* Family Smoking Prevention and

18

No. 55475-5-II

Tobacco Control Act, Pub. L. No. 111-31, § 2(15), (17)-(27), 123 Stat. 1776, 1777-78 (2009); *Lorillard*, 533 U.S. at 558-61.  And the United States Court of Appeals for the Fourth Circuit found it reasonable for a city to conclude "that there is a 'definite correlation between alcoholic beverage advertising and underage drinking.'"  *Anheuser-Busch*, 101 F.3d at 327 (quoting *Anheuser–Busch v. Schmoke*, 63 F.3d 1305, 1314 (4th Cir. 1995)).

The State identified other supportive sources in the summary judgment proceedings below. One study found "consistent evidence to link alcohol advertising with the uptake of drinking among non-drinking young people, and increased consumption among their drinking peers."  CP at 292.  Another study showed that "[g]reater initial medical marijuana advertising exposure was significantly associated with a higher probability of marijuana use and stronger intentions to use one year later."  CP at 257.

Here, the challenged restrictions are limited to the 1,000-foot provision, the sign size limitation, and restrictions on signs at trade shows and other events held at facilities not limited to persons age 21 or above.[22]  Together, these restrictions minimize marijuana advertising near locations where one can reasonably assume children congregate, like schools, playgrounds, recreation centers, child care centers, parks, libraries, game arcades, arenas, stadiums, malls, fairs, and farmers markets.  *See* former RCW 69.50.369(1), (7)(b).

Common sense leads to the conclusion that minimizing marijuana advertising in areas where children congregate regularly would decrease their exposure to that advertising.  And common sense, studies, and anecdotes from other jurisdictions allow the State to conclude that less

---

[22]  Although Seattle Events lists these three challenged restrictions, Seattle Events' arguments on appeal appear to be tailored to the 1,000-foot buffer provision.

No. 55475-5-II

exposure to marijuana advertising would make minors less likely to use marijuana, especially since the same is true about other regulated products like alcohol and tobacco. *See* Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 2(15), (17)-(27), 123 Stat. 1776, 1777-78 (2009); *Lorillard*, 533 U.S. at 558-61; *Anheuser-Busch*, 101 F.3d at 327. Therefore, the State has shown that the challenged restrictions minimize marijuana advertising near children and directly advance the State's substantial interest in preventing underage marijuana use. *See Fla. Bar*, 515 U.S. at 628. Thus, the State has satisfied the third *Central Hudson* step. *See Central Hudson*, 447 U.S. at 566.[23],[24]

  4.  The Challenged Restrictions Are Not More Extensive Than Necessary

  The fourth and final step of the *Central Hudson* analysis determines whether the challenged restrictions are not more extensive than necessary. *Id.* At this step, the State must show "a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (internal quotation marks omitted) (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 106 S. Ct. 2968, 92 L. Ed. 2d 266 (1986), *abrogated on other grounds by 44 Liquormart, Inc. v.*

---

[23] For the first time in its reply brief, Seattle Events argues that the third *Central Hudson* prong is not met because the challenged restrictions are more restrictive than alcohol restrictions. Although Seattle Events discussed the differential treatment of marijuana and alcohol advertising in its opening brief, those discussions were limited to its state constitutional argument and its argument regarding strict scrutiny. We do not address Seattle Events' argument about differential treatment under *Central Hudson* because it is raised for the first time in its reply brief. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

[24] Seattle Events appears to raise an equal protection claim for the first time in its reply brief, but only in the context of its argument that strict scrutiny applies. The strict scrutiny argument is addressed above.

20

No. 55475-5-II

*Rhode Island*, 517 U.S. 484, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996) (plurality opinion)). That fit can be "not necessarily perfect, but reasonable," and must be "'in proportion to the interest served.'" *Id.* (quoting *In re R. M. J.*, 455 U.S. 191, 203, 102 S. Ct. 929, 71 L. Ed. 2d 64 (1982)). This analysis does not require the State to employ the least restrictive means, but instead "a means narrowly tailored to achieve the desired objective." *Id.*

In determining the fourth step of the *Central Hudson* analysis, the Fourth Circuit upheld an ordinance "banning [alcohol] advertisements in particular areas where children are expected to walk to school or play in their neighborhood." *Anheuser-Busch*, 101 F.3d at 327. The Fourth Circuit held that the ordinance "expressly target[ed] persons who cannot be legal users of alcoholic beverages," and did "not ban outdoor advertising of alcoholic beverages outright but merely restrict[ed] the time, place, and manner of such advertisements." *Id.* at 329. Further, the ordinance did "not foreclose the plethora of newspaper, magazine, radio, television, direct mail, Internet, and other media available" to alcohol companies. *Id.*

Seattle Events relies heavily on *Lorillard*, 533 U.S. 525. In *Lorillard*, the Court struck down outdoor advertising regulations prohibiting smokeless tobacco or cigar advertising within 1,000 feet of a school or playground. *Id.* at 565-66. In so holding, the Court found a lack of tailoring based on the "the uniformly broad sweep of the geographical limitation" since the prohibition "would prevent advertising in 87% to 91% of Boston, Worcester, and Springfield, Massachusetts." *Id.* at 562, 563. But the geographical reach of the regulations addressed in *Lorillard* was "compounded by other factors." *Id.* at 562. The regulations "include[d] not only advertising located outside an establishment, but also advertising inside a store if that advertising [was] visible from outside the store. The regulations restrict[ed] advertisements of any size and

21

No. 55475-5-II

the term advertisement also include[d] oral statements." *Id.* "Apparently that restriction mean[t] that a retailer [was] unable to answer inquiries about its tobacco products if that communication occur[ed] outdoors." *Id.* at 563.

Here, like in *Lorillard*, the challenged restrictions prohibit advertising within 1,000 feet of many places where minors are likely to congregate and, therefore, cover a broad geographical area. *See id.* at 562, 563. But the challenged restrictions themselves substantially differ from the ones struck down in *Lorillard*. Unlike the restrictions in *Lorillard*, there is no outright ban on outdoor advertising. *See id.* at 565-66. No matter where a marijuana store is located, the challenged restrictions ensure that the business can use two signs to advertise its name, location, and nature of the business. Former RCW 69.50.369(7)(c). The challenged restrictions only restrict in-store advertising that is in a window and facing outward, as opposed to all advertisements that could be seen outside. Former RCW 69.50.369(7)(e)(1); *see Lorillard*, 533 U.S. at 562. And the restrictions held unconstitutional in *Lorillard* banned "oral statements" as advertisements, while no such restriction exists here. 533 U.S. at 562. Because the geographical reach of the challenged restrictions is not "compounded by other factors," *Lorillard* does not require us to find the challenged restrictions unconstitutional. *Id.*

When enacting the challenged restrictions, the legislature took care to make a finding that the challenged restrictions "leave[] ample opportunities for licensed marijuana businesses to market their products to those who are of legal age to purchase them, without infringing on the free speech rights of business owners." LAWS OF 2017, ch. 317, § 12. The statutory scheme, as a whole, supports the legislature's finding.

22

No. 55475-5-II

The challenged restrictions do not create an outright ban on outdoor advertising but instead list specific public areas that marijuana advertising cannot generally be placed near. Former RCW 69.50.369(1), (7)(b). These specific public areas include areas where one can reasonably assume that children congregate, like schools, playgrounds, recreation centers, child care centers, parks, libraries, game arcades, arenas, stadiums, malls, fairs, and farmers markets. Former RCW 69.50.369(1), (7)(b). Importantly, the challenged restrictions allow marijuana advertising, even at the above listed locations, as long as the location is being used for an adults-only event. Former RCW 69.50.369(7)(e)(ii); WAC 314-55-155(2)(d). The challenged restrictions also allow physical storefronts to have two signs advertising their business by using their name, location, and the nature of their business. Former RCW 69.50.369(2), (7)(c). Stores may use these two signs even where localities have decided to allow physical storefronts within 1,000 feet of child care centers, arcades, parks, public transit centers, or recreation centers. WAC 314-55-155(1)(b)(i), (2)(a); *see, e.g.*, Seattle Municipal Code § 23.42.058(C)(3).

The advertising restrictions merely minimize advertising "in particular areas where children are expected to walk to school or play in their neighborhood." *Anheuser-Busch*, 101 F.3d at 327. And the statutory scheme carves out exceptions for physical storefronts and adult-only events. Former RCW 69.50.369(1), (7)(b), (7)(c), (7)(e)(ii); WAC 314-55-155(1)(b)(i), (2)(d). The challenged restrictions also allow all other types of advertising that do not involve outdoor signage, like in *Anheuser-Busch*. *See Anheuser-Busch*, 101 F.3d at 329. Each of these features shows that the challenged restrictions are carefully crafted to minimize exposure of children to marijuana advertising while still allowing adults to see those advertisements; thus, the statutory scheme is "narrowly tailored to achieve the desired objective," preventing underage marijuana

23

No. 55475-5-II

consumption. *Fox*, 492 U.S. at 480. Therefore, the challenged commercial speech restrictions satisfy the fourth and final step of the *Central Hudson* analysis. *See Central Hudson,* 447 U.S. at 566.

## CONCLUSION

The challenged restrictions concern lawful activity that is not misleading, directly advance the government's substantial interest in preventing minors from using marijuana, and are not more extensive than necessary to advance that interest. Therefore, the superior court did not err in concluding that the challenged commercial speech restrictions do not violate the Washington or United States Constitution. Accordingly, we affirm both the superior court's order granting the State's summary judgment motion for dismissal of all claims against the State and denying Seattle Events' cross-motion for summary judgment and the superior court's order denying Seattle Events' motion for reconsideration.

Lee, J.

We concur:

Worswick, P.J.

Veljacic, J.